## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JEAN NORIEGA,** | Civil Action No. 21-3589 (MCA) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Defendants.** | |

This matter has been opened to the Court by Plaintiff's filing of an Amended Complaint. ECF No. 5. The Court previously granted Plaintiff's application to proceed *in forma pauperis* and also granted Plaintiff's motion to file an Amended Complaint. *See* ECF No. 4. For the reasons explained in this Memorandum Opinion, the federal claims in the Amended Complaint are dismissed pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). The Court also declines supplemental jurisdiction and also denies the request for counsel and class action treatment.

## I.   RELEVANT BACKGROUND

Plaintiff's Amended Complaint is one of numerous, nearly identical amended complaints,[1] from federal pretrial detainees at the Essex County Correctional Facility, purportedly seeking to proceed as a class action. *See, e.g.*, *McClain v. United States*, No. 21-4997, 2021 WL 2224270, at *1 (D.N.J. June 2, 2021); *Middlebrooks v. United States*, No. 21-

---

[1] In some cases, the district court dismissed the earlier versions of the complaint, for suing only the United States, which was immune under sovereign immunity. *See, e.g.*, *Marcano v. United States*, No. 21-7381, 2021 WL 2434022, at *2 (D.N.J. June 14, 2021); *Middlebrooks v. United States*, No. 1-9225, 2021 WL 1962895, at *2 (D.N.J. Apr. 15, 2021). In some cases, like the present one, plaintiffs sought to file an amended complaint, rather than face dismissal of their initial complaints.

9225, 2021 WL 2224308, at *1 (D.N.J. June 2, 2021); *Majerska v. United States*, 2021 WL 4739602, at *1 (D.N.J. Oct. 12, 2021); *Wilson v. United States*, 2022 WL 180326, at *1 (D.N.J. Jan. 20, 2022).

Like the other federal detainees, Plaintiff has sued the United States of America, the U.S. Marshals Service, the U.S. District Court for the District of New Jersey, Chief Judge Freda L. Wolfson, the U.S. Department of Justice, Governor Phil Murphy, the County of Essex, Director Alfaro Ortiz, Warden Guy Cirillo, and CFG Medical Services for purported violations pursuant to (1) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.; (3) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), (d); (4) the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq.; (5) the Religious Land Use and Institutionalized Persons Act, 42. U.S.C. § 2000cc et seq.; (6) 42 U.S.C. §§ 1983, 1985, 1986; and (7) the Administrative Procedures Act, 5 U.S.C. § 702. *See* ECF No. 5, at 1. Plaintiff also purportedly seeks mandamus relief pursuant to 28 U.S.C. § 1651 and 28 U.S.C. § 1361. *See id.*

Plaintiff brings a laundry list of purported federal claims, but the gravamen of the Amended Complaint alleges that the Government violated his speedy trial rights through Chief Judge Wolfson's COVID-19 pandemic-related standing orders. ECF No. 5 at 7–11. In those orders, Chief Judge Wolfson held that the pandemic warranted the exclusion of various periods of time from the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). Plaintiff, without any facts specific to him, also complains about various pandemic-related restrictions at the jail such as limited visitation, religious services, discovery access, legal research time, and medical care, as well as slow mail, lockdowns, quarantines, and a lack of access to attorneys. ECF No. 5 at 14-17.

## II.   STANDARD OF REVIEW

District courts must review complaints in civil actions in which a prisoner files suit

against "a governmental entity or officer or employee of a governmental entity," and in actions

where the plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a).

District courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2).  When considering a

dismissal for failure to state a claim on which relief can be granted, courts apply the same

standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure

12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege

"sufficient factual matter" to show that the claim is facially plausible.  *See Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover,

while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts

in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d

Cir. 2013) (citation omitted).

## III.   DISCUSSION

The Court begins with Plaintiff's constitutional claims against the immune defendants.

The Third Circuit held in *Jaffee v. United States*, 592 F.2d 712, 717–18 (3d Cir. 1979), that

sovereign immunity bars claims against the United States and its federal agencies and officials,

unless the United States explicitly waives its immunity. *See, e.g., Corr. Servs. Corp. v. Malesko*,

534 U.S. 61, 72 (2001); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008); *Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 436 (D.N.J. 2018).  It is well established that the United States is not subject to suit for constitutional torts, including the civil rights claims Plaintiff seeks to raise, and is entitled to absolute sovereign immunity.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 476-77, 484-85 (1994) (the United States is immune from suit for constitutional torts, and *Bivens* provides no cause of action against the United States or its agencies); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949) (sovereign immunity bars suit against the United States either for damages or for injunctive relief requiring government action); *United States v. Rural Elec. Convenience Co-op. Co.*, 922 F.2d 429, 434 (7th Cir. 1991) (sovereign immunity bars suits seeking damages or coercive injunctive relief).  Similarly, federal agencies and entities, like the United States Department of Justice, the United States Marshals Service, and the United States District Court for the District of New Jersey, are also immune from suit in civil rights matters, because they have not explicitly waived sovereign immunity.  *See e.g., Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007); *see also Gary v. Gardner*, 445 F. App'x 466–67 (3d Cir. 2011) (holding that "the United States Marshals Service is entitled to sovereign immunity from suit" absent an explicit waiver of sovereign immunity); *Hill v. United States*, No. 21-03872, 2021 WL 3879101, at *3 (D.N.J. Aug. 30, 2021).  "Sovereign immunity not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States." *Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).  For these reasons, the Court dismisses with prejudice the constitutional tort claims against the United States, the U.S. Department of Justice, the U.S. Marshals Service, and the U.S. District Court for the District of New Jersey.

Plaintiff has also sued Chief Judge Wolfson for violations of his speedy trial rights based on her pandemic-related standing orders.  In particular, Plaintiff takes issue with Chief Judge Wolfson's decisions excluding time under the Speedy Trial Act in light of the pandemic. The Sixth Amendment guarantees that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.  The speedy trial guarantee "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. I, 8 (1982).

Judges, however, are generally "immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991).  The doctrine of judicial immunity stems from "the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). "When a judge has acted in his or her judicial capacity, as opposed to an executive or administrative capacity, he or she is entitled to absolute judicial immunity from damage claims even when his or her action was erroneous, done maliciously, or exceeded his or her authority." *Richardson v. Wilkinsburg Police Dep't*, No. 16-0129, 2016 WL 4141084, at *4 (W.D. Pa. Aug. 4, 2016) (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)).  In contrast, judges are not entitled to judicial immunity for mere "administrative acts." *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769–70 (3d Cir. 2000); *see also Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that a judge was acting in an administrative capacity, rather than his judicial capacity, in terminating a subordinate court employee).

As explained by the Honorable Kevin McNulty in dismissing the same type of claim brought by another federal pretrial detainee, the standing orders at issue here "were clearly issued in a judicial rather than administrative capacity, notwithstanding Plaintiff's assertion to the contrary, and Judge Wolfson is therefore absolutely immune from suit in this civil rights matter." *Hill v. United States*, Civ. No. 21-03872, 2021 WL 3879101, at *3 (D.N.J. Aug. 30, 2021) (citing *Figueroa v. Blackburn*, 208 F.3d 435, 440-41 (3d Cir. 2000) ("judges ... are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly"). Indeed, in issuing the standing orders, Chief Judge Wolfson acted in her judicial capacity as the Chief Judge and addressed the effect of a global pandemic on the speedy trial rights of pretrial detainees in this District. Accordingly, because the acts in question are plainly judicial, Chief Judge Wolfson is entitled to absolute immunity from Plaintiff's claims for monetary damages, and the Amended Complaint is dismissed <u>with prejudice</u> as to Chief Judge Wolfson for her judicial acts in connection with issuing the standing orders.[2]

Plaintiff also asks this Court to "declare" that Chief Judge Wolfson violated a litany of statutes and constitutional amendments. ECF No. 5 at 23. Declaratory judgment, however, "is inappropriate solely to adjudicate past conduct." *Corliss v. O'Brien*, 200 F. App'x 80, 84–85 (3d

---

[2] To the extent Plaintiff claims that Chief Judge Wolfson conspired with other Defendants to violate Plaintiff's speedy trial rights by issuing the standing orders, such claims for damages are also dismissed <u>with prejudice</u> on the basis of judicial immunity. *See Harvey v. Loftus*, 505 F. App'x. 87, 90 (3d Cir. 2012) (affirming dismissal conspiracy claim on judicial immunity grounds); Stankowski v. Farley, 251 F. App'x. 743, 746 (3d Cir. 2007); *Panayotides v. Rabenold*, 35 F. Supp.2d 411, 414–16 (E.D. Pa.1999) (dismissing claims against judges whose acts were part of conspiracy).

It appears that Plaintiff has sued Chief Judge Wolfson for violations of his constitutional rights pursuant to *Bivens*; to the extent he seeks damages against her under any other federal statute in connection with the standing orders, those claims are likewise dismissed with prejudice.

Cir. 2006). "Nor is declaratory judgment meant simply to proclaim that one party is liable to another." *Id.* To the extent Plaintiff seeks declaratory relief to address the effect of the standing orders on him personally, *i.e.*, to prospectively protect his rights, he has not pleaded facts to support such a claim. Plaintiff's claims for declaratory and injunctive relief are therefore dismissed without prejudice.[3]

As noted above, the gravamen of Plaintiff's Complaint is a speedy trial claim, and he seeks jail time credit as a remedy. This claim would fail even if Plaintiff had sued non-immune defendants. Plaintiff alleges that he is a pre-trial detainee, and courts in this Circuit generally decline to exercise pre-trial habeas jurisdiction. A speedy trial challenge to detention or to seek additional jail credits towards a sentence are therefore most appropriately made through a motion filed in the underlying criminal case.[4] *See, e.g., Reese v. Warden Philadelphia FDC*, 904 F.3d 244, 246-47 (3d Cir. 2018) (pre-trial detainee may not resort to habeas petition and must instead

---

[3] Although the Court need not reach this issue, District Courts in this District have determined that Chief Judge Wolfson's standing orders, issued in response to the COVID-19 pandemic" are "supported by detailed findings, and provide[ ] a sound factual and legal basis that any delays are supported by the ends of justice, consistent with the Speedy Trial Act and the Sixth Amendment." *See, e.g., United States v. Hafner*, No. 19-790, 2021 WL 1873560, at *3 (D.N.J. May 10, 2021) (internal quotation marks omitted) (citing *United States v. Kaetz*, 2021 WL 37925, at *8 n.8 (D.N.J. Jan. 4, 2021); *see also Murray v. United States*, 2021 WL 4772174, at *4–5 (D.N.J. Oct. 13, 2021) (addressing the standing orders in a similar civil rights claim).

[4] For convicted prisoners, a civil rights claim may not be used to challenge the fact or length of a prisoner's detention. Any claim challenging the fact or length of a prisoner's detention must be raised either via a motion in the criminal case or a habeas corpus petition. *See, e.g., Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("a ... prisoner's [civil rights] action is barred (absent prior invalidation [of his period of detention]) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal [disciplinary] proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration"); *Edwards v. Balisok*, 520 U.S. 641, 643-48 (1997) (award or restoration of additional jail credits in civil rights action would impugn validity of length of detention).

seek pre-trial relief through the filing of a criminal motion); *McClain v. United States*, No. 21-4997, 2021 WL 2224270, at *4 (D.N.J. Jun. 2, 2021) (explaining same).

As to the remaining named Defendants – Governor Murphy, Essex County, Director Ortiz, Warden Cirillo, and CFG Medical Services – Plaintiff fails to plead adequate facts showing that these defendants are personally involved in the alleged wrongs and also fails to delineate which Defendant(s) committed each alleged violation.  Plaintiff states only that Governor Murphy issued "Covid-19 emergency orders that were used by defendants to deprive plaintiff of constitutional rights"; that the District of New Jersey and the United States employ some of the defendants and should be responsible as such; that Director Ortiz issued unspecified "emergency declarations;" and that all of the Defendants other than this Court, Governor Murphy, and the United States, "conspired" to deprive him of his rights.  Complaint at 6-7.

With respect to the individual Defendants, a defendant in a federal civil rights matter may not be held liable based solely on his role as a supervisor.  To be held liable, such a supervisor must have had "personal involvement in the alleged wrongs."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (civil rights defendants may not be held liable under *respondeat superior* theory of liability).  Thus, a plaintiff must generally plead facts showing either the supervisory defendant's "participation [in the alleged wrong], or ... actual knowledge and acquiescence [in his subordinate's wrongdoing]." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), rev'd on other grounds, 135 S. Ct. 2042 (2015).  For these reasons, the civil rights claims against the individual Defendants are dismissed without prejudice for failure to state a claim for relief.

In the case of a municipal defendant or outside contractor, such as Defendants Essex County and CFG Medical Services, a plaintiff must plead facts showing that the municipality or contractor adopted a policy, practice, or custom which was ultimately responsible for the alleged violation. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978).  A municipal or corporate policy, practice, or custom must be the "moving force" behind the alleged constitutional violation for a plaintiff to plead a plausible claim for relief.  *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-36 (2010).  Plaintiff's Amended Complaint fails to allege facts showing that the violations occurred as a result of any policy of custom of Essex County or CFG Medical Services, and such claims are dismissed <u>without prejudice</u> for failure to state a claim for relief.

In addition, Plaintiff's bald assertion of a "conspiracy" among the Defendants to deny Plaintiff's constitutional rights does not state a claim for relief.  A plaintiff who seeks to plead a conspiracy cannot rest on bare accusations, but must instead plead facts showing actual agreement between the alleged conspirators and concerted action towards the object of the conspiracy.  *See, e.g., Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008); *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("the bare allegation of an agreement is insufficient to sustain a conspiracy claim"); *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015) (showing that two parties' actions had the same result is insufficient to show conspiracy, which requires a showing of actual agreement and concerted action).

Moreover, the Amended Complaint's allegations about the lockdowns, restrictions on visitation, restrictions on religious rights, limitations on attorney access, and limitations on medical and dental care are also highly generalized, and Plaintiff does not provide sufficient

facts showing that <u>his own rights</u> were violated by these alleged restrictions. For example, Plaintiff does not provide any facts to suggest that he had a need for medical or dental services, which was denied or delayed, that his right to practice his religion was denied, or that he and his attorney were unable to prepare his defense or negotiate a plea deal due to restrictions on attorney access. As such, Plaintiff's civil rights claims fail on this basis as well.

In addition to the civil rights claims, the Amended Complaint alleges claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), the federal Civil Racketeer Influenced and Corrupt Organizations Act (RICO) statute, 18 U.S.C. § 1962, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42. U.S.C. § 2000cc et seq. These claims are also inadequately pleaded.

"The United States has waived its sovereign immunity in prescribed circumstances in accordance with the [FTCA]." *See Dalal v. Molinelli*, No. 20-1434, 2021 WL 1208901, at *9 (D.N.J. Mar. 30, 2021) (citing *Santos v. United States*, 559 F.3d 189, 193 (3d Cir. 2009). The FTCA, § 1346(b)(1), however, lists six threshold requirements that a plaintiffs claim must satisfy to confer jurisdiction. A claim must be made

> "[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original). Notably, the cause of action in an FTCA claim must come from state tort law. *Id.* at 478 (describing state tort law as "the source of substantive liability under the FTCA"). Plaintiff alleges in a conclusory fashion that his rights were violated under the FTCA because "Incorporating [the prior allegations], the United States employed Defendants who conspired to

violate the constitutional rights of Plaintiff." As noted above, constitutional tort claims are not

"cognizable" under § 1346(b), *see Meyer*. 510 U.S. at 477. Because Plaintiff has not pleaded the

elements of a FTCA claim or facts in support thereof, this claim is dismissed <u>without prejudice</u>

as to the United States and <u>with prejudice</u> as to the remaining Defendants, who are not proper

Defendants under the FTCA.[5]

Likewise, to the extent Plaintiff asserts civil RICO claims, he has failed to allege many of

the elements of such a claim – particularly, the essential elements of conduct of an enterprise

through a pattern of racketeering activity. *See, e.g., Parness v. Christie*, No. 15-3505, 2015 WL

4997430, at \*6-8 (D.N.J. August 19, 2015). He has likewise failed to plead cognizable RICO

losses – civil RICO may only be used to recover "concrete financial loss" in the form of an

injury to property or business; personal injury or emotional harm are not proper bases for a RICO

claim. *Id.*; *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000); *Magnum v.*

*Archdiocese of Philadelphia*, 253 F. App'x 224, 227 (3d Cir. 2007). Plaintiff instead asserts

constitutional violations, including prolonged pre-trial detention, and his claims appear

unrelated to the kind of losses addressed by RICO. The RICO claim is therefore dismissed

without prejudice as to all Defendants.

The Amended Complaint also fails to state a claim under RLUIPA. To state a claim

under that statute, Plaintiff must plead facts showing that Defendants burdened his personal

sincerely held religious beliefs and the exercise thereof. *See, e.g., Holt v. Hobbs*, 574 U.S. 352,

---

[5] In addition, prior to bringing a claim against the United States under the FTCA, a plaintiff must first present a claim to the appropriate federal agency, and the agency must render a final decision on the claim, or the time for it to do so must expire. *Burrell v. Loungo*, 750 F. App'x 149, 154 (3d Cir. 2018) (per curiam) (citing 28 U.S.C. § 2675(a); *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015)). This exhaustion requirement is jurisdictional and cannot be waived. *Id.*

360-61 (2015); *Farnsworth v. Davis*, No. 7:20-CV-00264, 2020 WL 4017848, at *3 (W.D. Va.

July 16, 2020) (dismissing RLUIPA claim where plaintiff claimed he was barred from church

services but did not indicate his religion or beliefs, including any allegation that attendance at

services at some regular interval is a precept of his religion).  Plaintiff does not provide any facts

about his sincerely held religious beliefs or explain how those beliefs or related practices have

been burdened.  As such, the RLUIPA claims are dismissed without prejudice for failure to state

a claim for relief.[6]

Plaintiff also asserts jurisdiction under the Administrative Procedure Act ("APA"), 5

U.S.C. § 702, which governs judicial review of agency decisions.  "The APA does not provide

an independent basis for federal jurisdiction."  *Elhaouat v. Mueller*, Civ. No. 07–632, 2007 WL

2332488, at *3 n.5 (E.D. Pa. Aug. 9, 2007) (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977)).

Jurisdiction for an APA claim is based on federal question jurisdiction under 28 U.S.C. § 1331.

Pursuant to the APA, "[a] person suffering legal wrong because of agency action, or adversely

affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

judicial review thereof."  5 U.S.C. § 702.  Because Plaintiff has not pleaded facts to suggest that

his federal rights have been violated by an agency decision, his APA claims are likewise

dismissed without prejudice.

Plaintiff also seeks mandamus relief pursuant to 28 U.S.C. § 1651 and 28 U.S.C. § 1361.

28 U.S.C. § 1651(a), provides:  "The Supreme Court and all courts established by Act of

Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law."  Writs of mandamus are also authorized by 28

---

[6] Because Plaintiff's RLUIPA claim is clearly deficient, this Court need not, and does not,
whether any named Defendant is actually a proper Defendant for RLUIPA purposes.

U.S.C. § 1361, which grants jurisdiction to district courts in "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is an appropriate remedy in extraordinary circumstances only. *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996) (citing *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 403 (1976). A petitioner seeking the issuance of a writ of mandamus must have no other adequate means to obtain the desired relief, and must show that the right to issuance is clear and indisputable. *See Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, (1980). Similarly, "[t]he extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a 'clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). "A party seeking the issuance of the writ of mandamus must 'have no other adequate means to attain the relief he desires,' and must show that the 'right to the issuance of the writ is clear and indisputable." *Volcy v. United States*, 469 F. App'x 82, 83 (3d Cir. 2012) (per curiam) (citing *Stehney v. Perry*, 101 F.3d 925, 934 & n. 6 (3d Cir. 1996) (quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)). Here, Plaintiff has not shown he has a clear right to the issuance of the writ with respect to any of his generalized claims, *see* Amended Complaint at 22, and the request for mandamus relief is denied without prejudice.

Finally, Plaintiff seeks to assert claims under the NJCRA. Having dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims.[7] *See* 28 U.S.C. § 1367(c). Such a dismissal is appropriate where, as here, the only federal claims have been dismissed, the case has not progressed substantially, and no particular prejudice will result.

---

[7] Plaintiff's Amended Complaint also mentions diversity jurisdiction but does not plead the requirements for diversity jurisdiction.

See *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019); *see also*

*Bringa v. Roque*, Civ. No. 13-3296, 2015 WL 857884, at *5 (D.N.J. Feb. 27, 2015) ("the court

may, within its discretion, decline to exercise supplemental jurisdiction" over the remaining

state-law claims").  Having dismissed the federal claims in the Amended Complaint at screening,

the Court also denies the request for counsel and the request for class action treatment.

## IV.    CONCLUSION

In sum, the Court dismisses the *Bivens* claims <u>with prejudice</u> as to the United States,  the

U.S. District Court for the District of New Jersey, the U.S. Department of Justice, the U.S.

Marshals Service.  The Court dismisses the *Bivens* claims for damages <u>with prejudice</u> as to Judge

Wolfson and <u>without prejudice</u> as to the claims for injunctive/declaratory relief.  The FTCA

claims are dismissed <u>without prejudice</u> as to the United States and <u>with prejudice</u> as to all other

Defendants.  The federal claims in the Amended Complaint are otherwise dismissed <u>without</u>

<u>prejudice</u>.  The Court declines supplemental jurisdiction over the state law claims, and denies the

requests for counsel and class action treatment.  An appropriate Order follows.

6|8|22

_____
Madeline Cox Arleo, District Judge
United States District Court